LOTTINGER, Judge.
This is a suit wherein the plaintiff seeks the sum of $150 as damages for the value of a cow which he alleges was deliberately run over by a truck owned and driven by the defendant. The petition sets forth that the defendant was using his truck to drive cows from his farm when he intentionally drove into plaintiff’s cow, breaking two of her legs which necessitated her destruction.
The defendant first filed exceptions of no right or cause of action, which were overruled, and then filed an answer in the nature of a general denial. He was condemned in the-court below to pay* damage? as prayed for and has appealed.
The district judge rendered written reasons for judgment wherein he held in part as follows:. , , .
“The proof shows that, on Sunday morning, August 24, 1952, defendant having been'notified by a neighbor that some cows were in defendant’s field, took- his “pickup” truck, and accompanied by his hired hand, W. M. Dill, who is also his grandson-in-law, went to the field and proceeded to run the cows out of it, defendant using his truck for that purpose and with Dill on foot.
Defendant’s field fence enclosed a forty-acre tract, with a gravel road running just outside, along the east and north sides. The fence has two gates, one on the north side, about midway between the northeast and. northwest corners (hereinafter referred to as “north gate”) and one :the west side, near the northwest corner.
’ There were no crops growing in the field. It had been ploughed or disced from three to six weeks before the occurrence related in the evidence. The ground was soft, dry and very dusty.
One witness testified that on the morning in question, he, with his father, was driving along the road on the East side when he observed defendant driving the cattle with a truck and that one of the cows, a black and white spotted one, was then “carrying” one back leg. He saw defendant’s truck run up to the bunch of cattle, but couldn’t, tell whether the cattle or the nearby fence had stopped the truck.. A number of witnesses testified that they observed tire skid marks on the ground in several places, as if the application of brakes had caused the skidding of the tires and within a. few feet of- where the cow was found down and unable to arise, due to two broken legs, one front and one back, these tire skid marks were evident on the ground.
The plaintiff, himself, and all of plaintiff’s witnesses, impressed the Court as testifying to the exact truth, in an honest, straightforward manner and without evasion or equivocation.
*205 Defendant and his grandson-in-law, Dill, testified that defendant, driving the track, and Dill on foot, undertook to run the cow's out of the- field. Defendant chased them around the field twice while Dill, on foot, attempted to “herd” them toward one of the gates. According to them, the track was driven in low gear, over the plowed ground, at not more than 8 to 10 miles per hour. The cows were not “panicked” or stampeded, and moved at a walk or in a trot. When the truck would approach the -cattle they would move in ’almost all directions, some in front and some on each side of the truck. Defendant said that- on one of these occasions, when he was some 30 or 40 feet away from the cows, one of them, a black and white spotted one, stumbled and fell and 6 or 8 others piled on top of her, and this is his way of accounting for the cow’s two broken legs, -but- he -didn’t know it was hurt'until late -on Sunday' evening, when he went back and discovered the cow was crippled. -Notwithstanding he had gone and looked at the cow early Sunday morning after driving the -other cows out, prodded her with a pine knot trying to get her up, and notwithstanding she, at that time had two broken legs, one front and one rear," he didn’t know she was hurt, according-to his-téstimony.
The place where the cow was down was about 30 feet from the north fence and defendant testified it was about 200 yards from the northwest comer. The north gate is about midway between the northwest and northeast corners. The north fence running along the north side of the forty-acre tract, means that it, is approximately 440 yards long, therefore, the north gate being about midway of the north fence, it would be about 220 yards from the northwest corner and the place where the cow was down ¡being about 200 yards east o-f the northwest corner, would mean the cow was down about 20 yards, or 60 feet, west of the north gate.
Bearing these locations in mind, the unreasonableness of defendant’s story becomes even more apparent. Both he and his witness, Dill, testified that after they had driven the cows out of the north gate (which, as we have seen, was approximately 60 feet from where the cow lay) they didn’t’go to see why the cow was down or try to drive it out of-'the gate 60-feet away, but got in the truck, drove out the north gate, closed the gate, drove down the road (the approximate 60 feet) stopped opposite the cow, Butts got out of the'truck, went over to .the wire fence, climbed it, went to the’ cow, prodded her with a pine knot, trying to get her up, and decided that she had sulled or was tired, but did not discover that she had two broken legs and one skinned leg. The court believes that any reasonable man, had he not already known that the cow couldn’t get up, would have .walked to where she. was, before he went put and closed the gate, and tried to get her out at the nearest gate, only about 60 feet away, rather than to have done as he did, and if she had been able to get up, to have to. drive her 200 yards to the northwest gate.
The witness, Dill, said he saw tbe cow stumble and seem to fall, but dust was so bad he couldn’t see anything else, except that the truck didn’t hit herl Although he saw the cow stumble and seem to fall and he afterward saw her down, only about 60 feet away, and although, at that time,' neither he .nor Butts had' mentioned the Cow, and although their object out there was to get the cows out of the -field, he went out the north'gate, closed it, and made no effort, to find out what was the matter with the cow and Butts mádé no mention óf her, until they had gone out of the field, closed the gate, driven down the road to a point opposite where the cow lay, (according to the above calculations, about 60. feet from the gate) gotten out o-f the truck, gone to and climbed the fence, examined the cow, came back and although he said Butts had gone over to drive the cow -out, when he came back, and had not done so, he, Dill, did not ask him why he had not driven her out. The Court asked him, if nothing was said between him and Butts about the cow, how he knew Butts had gone to drive the cow - out. He -didn’t answer that question until counsel took him on cross-examination and insisted that he answer it in some way, and *206 then finally said Butts had said, when he returned from where the cow lay, that she was probably tired and sulled and when she was rested she would get up.
For more than forty years, this Court has had experience seeing and hearing witnesses testify in court, observing their mannerisms, hesitations, evasions, etc., when they are lying and I have no hesitancy in saying that, in the Court’s opinion, both the defendant and the witness, Dill, even had not their testimony been so palpably unreasonable, manifested on the stand that they were not telling the truth, but, on the contrary, were falsely swearing.
This Court is of the unqualified opinion that defendant did drive his truck against plaintiff’s cow and thereby cause the injury which necessitated her destruction.
Certainly defendant had the legal right to drive the cows out of his field, but in doing that, he had no legal right to go beyond the means necessary to remove them, and as certainly, he had not the legal right either to wilfully or negligently injure them.
The charge in the petition is that he deliberately and intentionally committed the act that caused the injury and the Court is of the opinion that the evidence sustains that charge and that, therefore, the question of “negligence” the lack of which, Counsel for defendant urges in his brief, is not an issue.
The question is “fault”, as distinguished from “negligence”. If one, in his car, “intentionally” runs over a cow, he doesn’t do it “negligently”, because he “intended” to do it.
LSA-Civil Code Article 2315, says:
“Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it”. (Emphasis added.)
Certainly, in the opinion of this Court, plaintiff’s damage was caused b3 the fault of the defendant.
The common-law distinctions between wilful acts resulting in injury and simple negligence are not recognized in the Civil Law, which requires only acts constituting “fault” to give rise to a cause of action. Savoie v. Walker, La.App., 183 So. 530, 533.
In the Savoie case, the Court said:
“These distinctions are not recognized in the civil law. Article 2315 of our Civil Code provides that every act whatever of man, (whether deliberate, intentional, or merely negligent) that causes damage to another, obliges him by whose fault (not merely negligence) it happened .to repair it. The act does not give rise to an action unless it is coupled with a fault. This fault that causes the damage, or accompanies the act causing the damage, may be deliberate, willful and intentional (in which case it may be a criminal offense) or it may be an act arising from mere negligence.”
When a person, by his fault, causes damage to another, either by his act, his negligence, his imprudence,.or his want of skill, he is obliged to repair it. Lange v. Illinois Cent. R. R. Co., 107 La. 687, 31 So. 1003.
If the fortuitous event causing the loss was preceded by some fault of .the debtor, without which the loss- would not have happened, the debtor is liable. Louisiana Red Cypress Co. v. Morgan’s Louisiana & Texas R. R. Co., 7 Orleans App. 143.
This court entertains no doubt that defendant is liable for the damage suffered by plaintiff by reason of the loss of the cow, and, from all of'the evidence, the estimate of the cow’s value, as sued for ($150) seems fair and just.
A careful review of the record reflects nothing which would warrant a reversal of the findings of the court below. There is nothing which would indicate manifest error in these findings and consequently the judgment appealed from will b« affirmed.
Judgment affirmed,