CAVANAUGH, Judge.'
Plaintiff, as the surviving widow and natural tutrix of her seven minor ■ children, born issue of her marriage with O’Neal LeBoeuf, sues the defendants, DePaula Truck Line, a commercial'partnership composed of' Eugene Lato, Steve DePaula, and Joseph DePaula, Martin T. Folkes and Highway Insurance Underwriters, jointly and in solido for the sum of $25,812.20, which sum she claims as the surviving widow, and $10,071.40 for each of her seven children as tutrix, or for a total sum of $99,312. The suit is for damages plaintiff alleges she and her children have suffered on account of the death of her husband and for the value of an automobile owned and driven by him and involved in the accident.
Plaintiff alleges that on July 12, 1950, at about 12' o’clock noon, her husband was driving his 1942 Hudson coupe automobile on Highway 78, which is a paved highway extending along the right descending bank of Bayou Lafourche, in Lafourche Parish, *773 and while he was proceeding in the direction of Lockport about three-quarters of a mile or one mile on the lower side of Lockport, her husband’s automobile was run into by and collided with a De-Paula truck operated by its employee, Martin T. Folkes, who was driving in the opposite direction. The plaintiff alleges that the accident occurred on a portion of the highway that forms a curve which veered to the left of deceased as he was approaching Lockport, or as he was rounding the curve on its outside perimeter. She alleges that at the time of the accident the automobile in which her "husband was driving was in its proper lane of traffic and the specific acts of negligence charged to the defendant, Folkes, were the following: Not keeping a proper lookout and not keeping his truck under proper control where he could see the oncoming traffic, namely, the automobile of her deceased husband; that the defendant, Folkes," Was driving at an unlawful rate of speed and particularly on a rainy day "when the accident occurred; and that the truck and laige trailer job operated by the defendant was loaded with lumber, timber, pilings and other construction material and was overloaded, unmanageable, and large1' timbers were protruding in the" rear "and extending out from both sides. The plaintiff further alleges that the defendant immediately pri- or to the impact resulting in the accident and damages had passed -some vehicle which was presently unknown to her, in violation of the law, inasmuch as said passing was in or too near the curve to permit safe passage; and that the vision of the driver of said truck around said curve was not sufficiently great in distance to permit safe passage and overtaking of any other vehicle.
The plaintiff also alleges that "the Highway Insurance Underwriters of Austin, Texas,-had insured the truck being operated by the driver of the DePaula Truck Line, and the individual partners thereof, and that the policy was in full force and effect at the time of the accident.
The answer to the suit is a general denial except an admission that Mártin T. Folkes was employed by the defendant, DePaula Truck Line, and that the insurance company had issued the insurance contract, and had insured the automobile truck being operated by the defendants at the time of the accident, subject to the conditions'arid limitations and exclusions contained in said policy. They also admit that the driver Martin T. Folkes, was in defendants’ employ and was driving the truck referred to and insured at the time it collided with the automobile being driven by the decedent', O’Neal LeBoeuf. Defendants admit the accident and its occurrence, and the death of O’Neal : J. LeBoeuf, but they' especially deny that the accident and death o'f plaintiff’s husband was caused by any negligence on the part of the driver," Martin T. Folkes. They specially plead'ed "that'the defendant, Martin T. Folkes, was driving the tractor-trailer involved in the accident in a generally ..southerly direction on Highway 78 .at a speed of about 30 miles per hour; that he was operating the truck on his proper side of the highway as he approached a long righthand curve, and a§ he entered the curve the Hudson automobile being driven by plaintiff’s deceased husband approached from the opposite direction; that the deceased was driving his automobile on the "improper side of the 'highway and that he pulled to his right in order to return to the proper side of the highway and that he pulled too far to the right, of the east side of the highway, .and that the right wheel or wheels went off the pavement; that he immediately, swung his automobile sharply to the driver’s left in order tp get the automobile back on the highway, at which time he lost control of the automobile and it zigzagged across the highway into the path of the truck, which defendant Folkes was operating, although "defendant 1 ■ Folkes brought his vehicle over to the right so that the wheels of his tnick were off the right side of the pavement, and on the shoulder of the highway; that the Hudson automobile collided with the left front of the tractor near the left front door; that defendant Folkes was operating the truck in a reasonable and careful manner and that he took every precaution to avoid the accident, and that the accident fvas due entirely and *774 solely to the negligence on the part of the deceased, O’Neal J. LeBoeuf.
The defendants further plead, in the alternative, if any of them were negligent, proximately contributing to, or causing the accident, injuries, damages and expenses, that the plaintiff was barred from recovery by virtue of the contributory negligence of O’Neal J. LeBoeuf. The specific acts of contributory negligence alleged against plaintiff’s deceased husband were: In rounding a curve on the improper side of the highway; failing to keep his automobile under proper control and keeping a proper lookout; operating said automobile at a reckless and unlawful rate of speed under the circumstances, all of which acts of negligence defendants plead contributed to and were the proximate cause of the accident.
Upon the forégoing issues as reflected by the pleadings, the case was tried in the lower court and judgment was rendered in favor of the defendant, rejecting the plaintiff’s demands. An application for a new trial, and, in the alternative, for a rehearing was made by the plaintiff and was regularly heard and overruled.
From the judgment the plaintiff has appealed and by brief has assigned the following errors committed by the lower court in deciding the case against her:
1. That the District Court erred in deciding that the only point of plaintiff’s case involved whether or not the defendant truck had passed the Crowder automobile in or too near the curve as prohibited by law.
2. In holding that Mrs. Crowder’s testimony would have been adverse to the position of plaintiff, and that plaintiff’s failure to produce her led to the - conclusion that her testimony would have been adverse to plaintiff’s position.
3. In not granting a new trial in view of the supporting affidavit of Mrs. Crowder.
4. In not holding defendants totally responsible for the accident under the pleadings and the facts proven, and particularly ,as applied to LSA-R-S. 32:233(C) and (D).
The District Judge did not give any written reasons for his judgment in this case, and we do not know on what particular grounds he decided the case against the plaintiff, but we quote from appellee’s brief the following statement made from notes taken by counsel for appellee for the Court’s- reasons for judgment:
“The plaintiff has advanced two theories for recovery. The first theory is that the lumber truck had overtaken and passed another car. This is conceded by plaintiff to be the major prem-. ise, of, plaintiff. Now on that point we had three witnesses who testified. Miss Fox testified that she did not recall the car she was in having been passed by a truck. Teddy Lococo testified that he met the truck at the upper line of the Lococo property. The Lo-coco property had a frontage of about twelve and one-half acres and the driveway was about in the center of the frontage and therefore Teddy Lo-coco was about five and a half or six acres from the point of impact when he passed the truck. He did not remember passing any car. Now the little , colored boy says that he was about at the road- sign when he met the truck and it passed him and there was a car with, some ladies in it following the truck.
“It is plaintiff’s theory from the testimony of Miss Fox that since the car was going about fifteen or twenty miles an hour and the truck about twenty- • five or thirty miles an hour and the car was near the truck when the accident happened then the truck must have overtaken and passed the car. I do not think that theory was proven to the exclusion of all other theories. We have positive testimony from Miss Fox and the colored boy and Teddy Lococo and I cannot accept the plaintiff’s theory.
“Now the plaintiff’s second theory for recovery is that the truck was on its wrong side of the road at the time of the accident. The physical' facts *775 show that the car was struck a glancing blow and they show that the truck must have been pulling away from the car at the time of the impact rather than into it.
“Now here we have a case where there is a widow and several minor children. I would like to be able to give a judgment for the plaintiff; I really would like to be able to do that. I have read the testimony over twice and have read the briefs very carefully. And I might say here that I thought all the testimony given by all the witnesses was very straightforward.
“Now the plaintiff did not call Mrs. Crowder as a witness. Of course that was the privilege of the plaintiff not to do that. It does seem to me that if this truck had overtaken and passed the Crowder car just before the accident on a bad rainy day and had then been involved in an accident right in front of the Crowder car it would be reasonable to think that Mrs. Crowder or someone in the Crowder car would have remembered the truck passing the car.
“I simply do not think that the plaintiff has proved the case so let judgment be rendered in favor of the defendants dismissing the plaintiff’s suit.”
In view of the above statement, and in the absence of a written opinion by the trial judge, we have carefully studied the pleadings and the testimony to see if there is any manifest or reversible error in the case. We believe that the testimony in the record substantially reflects the following facts:
On the day of the accident, plaintiff’s husband was employed as a carpenter on a school building at LaRose, Louisiana. He worked on this building until about noon and had commenced that morning about 8 o’clock a. m. He lived on Bayou Blue, and, to get home, had to travel the highway where the accident occurred. He left the schoolhousé at LaRose, Louisiana, a few minutes after 12 o’clock noon, followed by other carpenters who worked on the building with him, namely, Edwin Gordy, Jimmy Dupre and Olence Dupre. Decedent was driving alone, and the other three persons were riding in the DeSoto automobile of the witness Gordy. It is the testimony of these three witnesses that between the time they left the LaRose school building until the decedent entered or passed into the curve where the accident happened, they never lost sight of him, and that he was travelling ahead of them in the highway a distance of 600 or 700 feet, sometimes less, and maybe sometimes a little more, but that the only time they ever lost sight of decedent’s car would be when he entered a curve in the highway. The driver of this car and these witnesses estimate the speed at which they were travelling be-' tween 40 and 45 miles per hour, and that the speed of the decedent was approximately the same as theirs. These witnesses did not see the collision but were the first to arrive there, and arrived at about the same time Mrs. J. C. Crowder and her niece, Aline Cox, arrived, travelling in the opposite direction.
The testimony of Mrs. J. C. Crowder was not taken, and it was her evidence the plaintiff sought in her application for new' trial and which is supported by her affidavit. Miss Cox was present at the trial and her testimony was that she and her aunt, Mrs. J. C. Crowder, on the day of the accident were going from Lockport to their home at Cut Off for lunch; that between Lockport and the place where the accident actually occurred, she did not remember any truck passing them on the highway, and that her aunt, Mrs. Crowd-er, who was driving the car in which they were riding, was. driving at a speed of only 15 or 20 miles per hour; that as they reached the scene where the accident occurred, Mrs. Crowder screamed, and when, she did, Miss Cox, who was talking to-children who were riding in the back seat, turned her head to the front or the direction in which they were travelling, and at that time she saw the Hudson automobile coming toward them at a slow *776 rate of speed on the left of the highway, and it proceeded off the highway, on the opposite side to the shoulder of the road with the head of the car pointing at. an angle toward Lockport. That Mrs. Crowd-er 'pulled her car to the right side of -the road and stopped, and called her to' get out, and that she got out and started to the car of decedent. That the decedent’s car, from the time she saw it in move-, ment, travelled about 16i^ feet. •
Reverting back now to the testimony pf Gordy and the two Dupres, we find that the last time they saw the decedent’s car was about 600 feet south of the Lococo driveway, proceeding, on his side of the road, travelling toward Lockport, and that when they reached the scene of the accident, they drove their DeSoto automobile and parked just above the LeBoeuf car and as they got out they saw Mrs.. Crowd-er coming across the highway to the Le-Boeuf car along with the blonde-headed girl, who was Miss Cox. We mention the meeting of these five people, who reached the scene of this accident almost, simultaneously, and only á few moments ¡after the impact and tragedy had occurred, to show thg.t although none of them actually saw the collision, three pf them did actually see .the Hudson automobile moving to the east or bayou side of the road. The witness Gordy, whose car was only about 600 feet behind the car of the decedent as he rounded the bend in -the curve and came in sight of the automobile said to Jimmy Dupre who was riding in the-front seat with him: “That boy’s in-a wreck,” and by the time they got there and got out of their car Mrs. Crowder and Miss Cox were coming over to the LeBoeuf car.
The driver of the truck, Martin T. Folkes, testified that'he left Slidell, Louisiana, about 7:45 o’clock with a truckload of lumber to be delivered to Valentine, which is down below Golden Meadow. The truck was a large G. M. C. truck, attached to which was a steel-bodied trailer 25 feet long and 7 or 8 feet wide, and was loaded with 5,184 feet of creosoted lumber or timbers 8 inches wide and 12 feet long and was stacked on the truck in two sections, front and back, and was fastened on the trailer by means of chains. The length of the tractor is not reflected by the evidence, but it is at least 15 or 20 feet. Therefore, it is fair to assume that the overall length of the trailer and tractor was between 40 and 50 feet. This witness arrived in the town of Lockport somewhere around noon, passed a caution light near the schoolhouse where he slowed down, and then proceeded on his journey down the highway to the destination where the lumber was to be carried. According to his testimony, from the time he left the caution light until the accident occurred, he did not pass any motor vehicle ■ and did not remember passing any. That he was familiar with the road, and knew where the curve was in the highway, and, that as.he entered the curve, he .slowed down because he could not see around it. After he entered the curve, he -saw the LeBoeuf automobile as it entered the Cut Off end of the curve, and that the Hudson automobile being driven by plaintiff’s husband was straddling the black line in the center, of the highway. When he saw this, he steered his truck to the right and left the pavement at the Lococo driveway, and that the decedent steered his car to the right and ran on the shoulder on the left side of the highway, and then steered his car to the left and diagonally across the road running into the truck, striking it on the left of the left fender up near the hood and that the car then proceeded down the left side of the truck and trailer, and his truck proceeded off the highway and came to a halt up near the side of the Lococo fence. This witness was asked how far away the driver of the Hudson automobile was when he drove the automobile on the shoulder on the east side of the road, and he could not give an estimate of the distance; neither did he give an estimate of the distance when he first saw the decedent’s automobile straddling the center line of the highway, although he said he saw him when he first entered the curve. He stat *777 ed that he had practically stopped, or had. applied his brakes when the car struck him, and that he was knocked out and that1 he did not drive the truck from the point of impact, but that it rolled to where it ultimately stopped. He stated that the impact between the automobile and the truck took place south of the Lococo driveway; that he suffered a headache and that -after he regained consciousness -he got out of the truck and sat down under an oak -tree close by the highway. He remembered Mrs. Crowder, the nurse, coming up to him and asking him if he wanted to go to a doctor. He was taken to Dr. Jones’ clinic where he received medical attention and remained' at the doctor’s office for about two hours, where eight stitches were taken to suture á laceration of his right ear and that'thereafter he ré-turned to the scene of the accident.
The truck driver, Martin T. Folkes, had been in the employ of the defendant, De-Paula Truck Line,.and had been driving the type of truck which was involved in this accident for about 13 'years. From the evidence contained in the record, it appears that he was a man 47 years old and, at the time of the accident, weighed about 185 pounds and was 6 feet 2 inches tall. It appears from his testimony and that of the other witnesses that this acci- • dent happened in the north end of the curve in this highway, either a .short distance above or a short distance below the Lococo driveway. The driver is positive that the accident occurred south, of the driveway, because he said he was leaving the slab or pav.ement at the driveway, and that the car struck him after he had the right side wheels of the tractor off the concrete slab. He is positive in his testimony that at .no time did he ever get over the center line of the highway or in the decedent’s lane of travel. He was the only surviving witness of this tragedy, as the driver of the other automobile was killed, and none of the witnesses saw where the actual impact took place.
Eugene LaForte, Jr., State Highway police officer, was in his automobile north of LaRose across- the intercoastal- canal when he received a call by radio from .the Sheriff’s office of Lafourche Parish about 12:30 or 12:40 p. m. He immediately drove to the scene of the accident. In describing the road where the accident ■ occurred,' he-said- there was a big curve there; that :the- curve from LaRose to Lockport turns to the left, and that -it is about-14 miles-from the Schoolhouse where the- deceased was working to the place where the accident -occurred on the highway. - When he' arrived at the point where the accident occurred, he found more than 75 people and more than 25 automobiles there;- Hé arrived at the scene of the accident ' after getting the radio .communication about'12:50 p.-m.-' Tire-LaBoetif car ‘ was still- there where it was on 'the bayou or east side of the highway; He -obtained little information from the truck driver 'right at that time 'because he 'stated thát he was kind of-knocked out. He talked ' to him for about two minutes and the'n the truck driver disappeared, and he 'did not see him any more'until he next saw him at Dr. Jones’ clinic at Lockport. He stated, however, that the truck driver pointed to him on the highway where the impact ' took' place and also told him where .the LeBoeuf car went off the east side of the road just before it came zigzagging across the highway striking his truck. This witness stated that he did not find any skid marks or any tire marks made by the Le-Boeuf automobile anywhere on the highway except at the point where it left the highway after the collision where it finally came to ‘a stop where he saw the marks of the car leaving the highway, and' he stated that there was not room between the' LeBoeuf car and the east side of the concrete slab to permit the parking of a véhiclé without itá being' partially bn the pavement. He stated that it was raining át LaRose when he left and was raining when he arrived at "the scene' of the accident. He found broken glass all around the highway or in the area where the impact took place, but he found more of the broken glass on the east side of the center ' line, which was the automobile side; than *778 he did on the west side of the center line, or the truck side. He saw a hubcap or a piece of fender of the automobile on the west side, or the truck side of the pavement, lying on the shoulder. It was north of the Lococo driveway. The driver of the truck pointed out to Highway Officer LaForte the point of impact as a foot or a foot and a half on the west side of the center line, or the truck side of the black line. The officer stated that he couldn’t determine the exact spot of impact because broken glass was found all around the general area of the accident, and the only tire mark he was able to locate was where the LeBoeuf car went off the highway when it came to a stop. He located the point of impact pointed out by the driver of the truck as being north of the Lococo driveway about a foot or about a foot and six inches west of the center line, or on the truckdriver's side of the slab. He marked on Exhibit “P-21” the point, where the truck left the highway, the point where it stopped, and located the area “A”, “B” and “D”, and the area adjoining the area north of the “B” on this exhibit and stated that most of the glass and debris were in the -area on the east side of the center lipe indicated by the red arrow on this exhibit.
Plaintiff called Ted Lococo and Lawrence Baptiste and Miss Aline Cox as witnesses to prove her charge that the truck driver had passed the car driven by Mrs. Crowder between Lockport and the north entry of this curve or in the curve. Ted Lococo saw the truck, but he did not see the automobile which Mrs. Crowder was driving. Lawrence Baptiste saw both the truck and the car, but he, like Lococo, stated that when he saw them, the truck was ahead of the car and that it was a-little bit over the center line of the highway, but not very much. Of course. Aline Cox, whose testimony we have already alluded to, was with Mrs. Crowder, and she stated the did not see any truck pass the car she and Mrs. Crowder were riding in at any time between Lockport and when they saw the truck at the accident. Other witnesses called by plaintiff supplied testimony showing that glass, dirt and other debris were principally on the east side of the center line of the highway and who testified as to where the LeBoeuf car stopped and where the truck stopped on the west side of the road and as to the tire marks made by the truck off the highway. Onofrio Lococo was in his father’s residence on the inside of the curve where this accident happened. This place has about 12% acres fronting on the highway; 5% or 6 acres north of the house, and about that same quantity south of it; the south half of it is in the curve and the north half of it bounds the highway where it is straight.
Plaintiff filed in the record photographs “P-3” to “P-26”, inclusive, some of which show the area of the highway where the accident occurred. Others show the condition of the automobile and truck after the accident. The camera was in various positions when these several photographs were made on different points in the highway. Defendant made and permitted plaintiff to use, on request, on the day of the trial photographs 19-26, inclusive, which were photographs defendants had made on the day following the accident or between that date and July 26, 1950. The photographs plaintiff made were Exhibits 3 to 18, inclusive, and were all made at a later date, or during the month of June, 1951, or a short while before this suit was filed. These photographs entered in the record show the damage done to the truck of defendant to be the left front bumper and left front side of the motor and fender, where the damage done to the automobile was along the entire left side, including the left front fender. The evidence 'shows that after the collision the automobile travelled down the side of the truck and trailer knocking off the clearance lights and cutting the left rear tire on one of the wheels of the trailer. The automobile was totally destroyed, and the entire left side wrecked. It appears from the photographs filed in the record that the contact of the automobile was made commencing along the side of the left fender and engine area with more force involved from the area along the left front door through *779 out the entiré/area and top of the left side of the car. 'This photograph was taken from a camera placed directly in front of the car, and this photograph does not reflect the left front of the grill or the front bumper. One of the witnesses (Arceneaux) for plaintiff testified that the grill and bumper and sealed light beam were taken off»at the request of plaintiff’s counsel for the purpose of preserving them for the trial. The junk man at the Lockport Automotive Service took these pieces off and they were not available for inspection at the time of the trial.
The photographs of the highway were taken from both north and south directions. These pictures were taken from within an area of 100 feet south and 100 feet north of the point where the collision occurred, and- some of them were in the general area where the accident occurred looking in both directions, north and south. These are evidenced by Exhibits “P-19”, “P-20”, “P-21” and “P-22”. These pictures were made by defendant, as previously stated, between the 13th and 26th of July, 1950, or a short time after the accident occurred. The snapshots or photographs of the highway made by plaintiff were made during the month of June, 1951, or just before the suit was filed. Plaintiff’s counsel and some of1 the witnesses who testified in the case were present when distances were measured and reflected in the evidence of the case as to the location of the Lococo drive, the point where the LeBoeuf car came to rest, and the point where the truck stopped, the distance south of the Lococo driveway where an object moving on the highway would become obscure on account of the curve in the road. These measurements were made in June, 1952.
The District Judge had all of this evidence before him, as well as 'the testimony of the only surviving' witness to the accident.
The case presented to us, from our analysis of the evidence and the exhibits, show that this accident occurred in the north end of a curve in the highway, and that the plaintiff’s husband was travelling at a fate of speed of between 40 and 45 miles per hour coming from the south. The defendant’s truck was entering this curve travelling at a rate of speed of approximately 30 miles per hour. It was plaintiff’s duty, under the law, while going north on the east side of this highway, or on the outside of this curve, to have his car under proper control so that he could see, when he could see, at least ,200 feet ahead, to accord vehicles coming in the opposite direction an equal portion of the highway. The same obligation rested upon the defendant truck driver, and if either one of them, while travelling, drove his motor vehicle on either side of the black line, which was not in his lane of travel in this curve, that person would be guilty of negligence if an accident occurred by reason of the motor vehicle he was operating being on the wrong side of the road.
Our statute governing this matter is contained in LSA-R.S. 32:232 which reads:
“Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving the other for at least two hundred feet before meeting, one half, of the main travelled portion of the highway.”
We know that automobile trucks and trailers approaching a curve from the right, or on the inside of the curve, the trailer has a tendency to follow the curve, but if the truck and trailer approaches that curve from the left, then the trailer has % tendency to swing to the left, or around, as held by this court in Cutrer v. Jones, 9 So.2d 859, and Thibodaux v. Culotta, 192 So. 712. Here we have the truck and trailer travelling on the inside of the curve, and the car on the outside. The only witness who survived the'accident testified that when he saw the car of plaintiff’s husband it was straddling the black line; that plaintiff’s husband’s automobile was in the center of the highway. He would not say and would' not venture an opinion as to how far the automobile was from him when he first saw it, or how far it came toward him straddling the center of the highway, and would not say where the driver of the automobile *780 turned abruptly to the right and ran up on the east shoulder of the highway, or the shoulder, of the highway on the truck driver’s left.
The "trial judge was confronted with the proposition of whether or not" the physical facts found in this "case established by circumstances which plaintiff contended preponderated in her favor to overcome the testimony of the 'only surviving witness. He held with the defendants' becaüse the plaintiff failed to prove that the truck passed the automobile" driven by Mrs. Crowder in the curve, or failed to prove that the truck struck the automobile, or failed to prove that the truck was on the wrong side of the highway, arid failed to prove that if a new trial was granted, and Mrs. Crowder’s testimony obtained, it would change his opinion in the cáse because she did not see the collision.
The state highway officer had made a diagram of the highway where this accident occurred. Reference was made in the diagram to the location of the Lococo residence and described and referred to the automobiles as Automobiles 1 and 2 in this diagram. This highway trooper was summoned as a witness for defendant. The defendant sought impeachment of this witness after he testified differently from the facts reflected by his report. His testimony favored plaintiff in some phases of the case. The credibility of the witness', Folkes, is involved in this case and also the credibility of the witness LaForte because of discrepancies in their testimony.
The record in this case shows that the driver of defendant’s truck admitted that when he first saw plaintiff’s deceased husband’s car, it was in the south end of the curve and that as it came into his view it was straddling the center line of the highway and continued to do so. until it suddenly veered to the right, and upon the should-, er of the road, and then suddenly pulled back to the left, coming diagonally across the pavement and striking defendant’s truck when it was partially off the pavement on defendant’s right side of the concrete slab. The truck dr iver would not venture an opinion or estimate as to the distance away decedent’s automobile was when he first saw it straddling the center line and the distance the automobile travelled occupying the center of the highway. If the truck driver saw and discovered the peril plaintiff’s deceased husband was in while driving toward him in the center of the highway, and the oncoming automobile was several hundred feet away, and at the time he did stop his truck or blow his horn or pull off the highway. when he had sufficient distance between him and the oncoming automobile to avoid the accident after he discovered the peril he would be negligent and his negligence would proximately cause the accident. The evidence in the record does not show the distánce from the point where plaintiff’s deceased husband rounded the curve and where the truck driver could have seen him. Neither does the record show the distance travelled by the automobile from the point where it could be seen rounding the curve to the point where the truck driver said decedent abruptly turned to the right and drove his car on the' shoulder, then veered back to the left travelling diagonally across the road.
Plaintiff’s charge of negligence against the defendants that the truck passed .the Crowder car just prior to entering the curve and that it had not regained its side of the road is not sustained by the evidence. The only other ground upon which defendant’s negligence could be predicated would be that the collision occurred in the automobile’s lane of travel.' To support this theory, plaintiff depends on the-physical facts of glass and debris caused by the wreck and found principally on the east part of the slab. She also relies on the damage done to the truck and automobile involved to support this theory. We have carefully studied the evidence with reference to showing the location of the debris to see if the point of impact could be determined from the evidence in the record when considered along with the testimony of the witnesses. It is just as reasonable to say from the location of the glass and debris that the impact occurred at the point the witness Folkes said it occurred, as it is to *781 infer that it occurred where the major portion of- the glass and debris were found. It was' raining at the time of the accident, and it had rained off and on the entire afternoon. There were no skid or tire marks showing, where the impact took place. When the highway officer reached the scene of the accident, he found 25 cars and about 75 people there. These automobiles were pulling on and off the shoúlder of the highway, and whether or not the original evidence in the nature of broken' glass and debris was disturbed, no one' will ever know, but we know that it could have been. Th'e evidence also shows that the debris and glass were strewn from the area where the impact is supposed to.have taken place, as testified by the- truck driver,. along the distance travelled by the car. It must be remembered that after the impact between the truck and car, the car proceeded along the side of the truck and trailer with the entire left side of the car mashed in. No doubt after the car had. left the side of the trailer loaded with lumber, this glass and other debris was scattered along its travel-led path. We have also considered the fact that the car when seen by the witness Cox and also referred to in the affidavit of Mrs. Crowder travelled for a distance of about 16 feet after it Was seen uhtii it ran off the pávement and came to rest. A minute examination of the photographs of the two vehicles involved in the accident leads us to the conclusion that the truck was pulling to its right when struck by the car, and that if the truck and trailer had been on the wrong side of the highway when the impact occurred, the car would not have travelled 50 feet after the impact but would have been knocked off the slab on its side of the highway. The evidence contained in the record is not sufficient to show that the impact occurred east of the center line of the .highway.
The plaintiff, relying solely upon •circumstantial evidence to show negligence .and recover damages against the defendant, is required to produce such evidence which must exclude every other reasonable hypothesis that the accident and damages resulted as she contended. Therefore, under our analysis of the .evidence in this-case, she has not.discharged the burden of proof. See 38 Am.Jur., page 1033, and Lanoix v. Home Indemnity Co. of New York, La.App., 13 So.2d 501.
We do not find sufficient evidence in the record to hold that there is any manifest error in the judgment of ,the trial court, and, accordingly, the judgment'is affirmed.
Rehearing denied. .
Lottinger, J., dissenting.