LOTTINGER, Judge.'
This is a tort action wherein the plaintiffs seek damages for an alleged timber-trespass which occurred on _ certain property owned by them in the Parish of West-Feliciana. The original petition named as-the party defendant the Wax Lumber Company, a Mississippi corporation, asserting-that this company had purchased from “Norvell Meeks and Harold Meeks, or Norvell Meeks” timber which was unlawfully removed from plaintiffs’ land; subsequently, a supplemental petition was filed! wherein there were named as additional-parties defendant Dorothy Bourgeois-Meeks, Administrator of the Succession, of Norvell Meeks, Mary Madeline Donaldson, Administrator of the Succession of J.. F. Meeks, Mrs. Margaret Meeks Vernon,. Liquidator of the Meeks Lumber Company- and Harold Meeks. As a result of a compromise agreement which was reached! with various of the defendants, this suit, on the day the case was set for trial, was-dismissed as to all defendants except Harold Meeks. An exception of prescription-, which was filed on behalf of the defendants, was overruled by the lower court and as the question has not been raised on-appeal, we presume that it has passed from' the case. The matter was duly tried on>. the merits in the court below and is now-before us on an appeal taken by the defendant, Harold Meeks, from a judgment-which was rendered against him in the amount of $1,055.56, less the sum of $500’ which the plaintiffs had accepted from the-estate of Norvell Meeks in the compromise-agreement previously referred to.
The record clearly establishes that at-the time of the alleged trespass, timber-was being removed from property belong-- *61 ing to the Meeks family which was located adjacent to property belonging to the plaintiffs. Also, it is clear from the record that a trespass did in fact occur and that timber was removed from the plaintiffs’ property. It is clearly shown that the decedent, Norvell Meeks was in charge, more or less, of these timber operations, that he sold the timber so removed from both tracts to the Wax Lumber Company and that payment for same was made by the latter by means of checks to his own personal order. The sole question presented, therefore, is what connection, if any, the defendant, Harold Meeks, had with these operations.
The principal evidence introduced by the plaintiffs centers around the testimony of a Mr. Rogers, who lived in the area and who was familiar with the property lines in the vicinity. This gentleman stated that on several occasions he visited the property and that each time Mr. Harold Meeks was on the road in his automobile near the scene but not in the woods and not dressed in working clothes. In addition to the testimony of this witness, the plaintiffs introduced the testimony of two Negro woodsmen, each of whom testified that their wages had been paid them on two occasions in cash by Harold Meeks. In spite of this, however, one of these men stated that although he had seen Harold Meeks in the vicinity, that he had been hired' by and worked for Norvell Meeks, who went into the woods, showed them where to cut and in general conducted the operations.
The principal other evidence which was sought to be introduced to show some connection between the two Meeks brothers, with respect to the timber business, was that of a Mr. Ewell Spillman, an employee of the Wax Lumber Company. This employee, over objection of counsel for the defendant, testified that Norvell Meeks had stated to him that his brother, Harold Meeks, was to receive one-half of the money from the sale . of the timber. While the trial judge stated that he did not take into consideration this testimony, we think it clear that same was inadmissible. See Miller v. Miller, 226 La. 273, 76 So.2d 3, 4, wherein the Supreme Court stated that “the only declarations by a person since deceased, which are admissible as exceptions to the hearsay rule, are dying declarations, statements against interest and in rare instances pertaining to family history, relationship and pedigree, where they are received as a matter of necessity.”
We find a stipulation in the record to the effect that if Mr. Lewis Wax, who is president of the Wax Lumber Company, were present he would testify that “Mr. Harold Meeks, one of the defendants herein, had no connection whatever with the Wax Lumber Company’s contract involving timber alleged in this suit to have been cut from plaintiffs’ land and sold to Wax Lumber Company.” We note, however, in Mr. Spillman’s testimony wherein he states that Mr. Lewis Wax did not have anything to do with the contract as he, Mr: Spill-man, is the one who handled the transaction. We note further, however, wherein he states that, “I made a deal, with Nor-vell Meeks to buy this timber. I mean that Meeks sold it in stumpage. Mr. Harold Meeks was not in -the deal with me.”
Without going into unnecessary detail with respect to the testimony of Harold Meeks, we think it sufficient to state that he emphatically denied any connection whatsoever with the timber operations or that there existed any agreement between him and his brother whereby he would share in the proceeds of the sale of timber. He admitted going to the locality on various occasions and stated that he had done so for various reasons, none of which wére connected with the timber business. He admitted on one occasion having' paid one of the employees but stated that he did this as an accommodation for his brother.
Following the trial, the lower court dictated his reasons for judgment into the record, which said reasons read in part as follows:
“The position of the Court is that the Meeks Lumber Company "definitely is liable (in) bad faith for the manu- *62 factored value of the timber. Mr. Rogers showed Mr. Norvell Meeks the line; this negro man showed Mr. Norvell Meeks the line and he must have known where it was. They went the entire distance of the boundary line. Mr. Rogers said that he rode horseback and Mr. Meeks walked. Now since the counsel on both sides have entered into a stipulation absolving the J. F. Meeks Lumber Company of any fault relative to this stipulation entered into that they were not involved, the Court takes the position that Mr. Meeks, Mr. Harold Meeks was involved. The Court takes a dim view that all these trips up there were for swimming and picking plums and such as that. I believe that Mr. Meeks was involved and I don’t believe that from the testimony from Mr. Spill-man. I disregard that completely. The only thing I understood relative to that testimony is what Mr. Picou said. I never did understand anything that Mr. Spillman said and I disregard that completely * * *. Mr. Meeks was up there for something besides swimming and picking plums. There has been 2 negroes that have testified here that they were paid by Mr. Meeks. (Harold Meeks.) One of these negroes I have known all of my life and I believe whether Mr. Meeks remembers it or not I believe he paid them off on one or two or three occasions whatever it was, and I believe that Mr. Meeks stood to gain from this operation. * * * It is the position of the Court that Mr. Harold Meeks is personally involved in some way and he derived some remuneration out of it or he wouldn’t have always been up there where they were bunching the logs up. Mr. Rogers testified that he was there when he was there, every time he went down the road he saw Mr. Meeks (Harold) there in his car. Mr. Meeks (Harold) had to have a reason to be there. We have two ne-groes’ testimony that said he paid them off on two or three occasions. One said two and one said two or three. It stands to reason even though the checks were issued to Mr. Norvell Meeks and cashed by him it is the position of the Court that he stood to gain some remuneration that he (Mr. Harold Meeks) stood to gain some remuneration from those timber operations. This time let the minutes of the Court show that judgment will be granted against Harold Meeks for reasons given personally, not to Meeks Lumber Company because they have been stipulated out of it, that the Judgment be in the amount of Mr. Butler Lawrason’s testimony according to the footage that he testified and according to the manufactured value that he testified.”
It is with great reluctance that we ever reverse a trial judge’s findings of fact, but in this case we feel compelled to do so. It might be that the trial judge did not believe the testimony of Meeks, but the plaintiff is nonetheless bound to prove his case by a preponderance of the evidence. We do not believe that the evidence introduced here and commented upon above is sufficient proof to show such a relationship existed between Harold Meeks and Norvell Meeks in the timber operations here conducted on plaintiffs’ property such as to render*the former liable for damages. The circumstantial evidence relied upon here is hardly sufficient to prove that Mr. Harold Meeks had anything to do with the trespass. It has been held by the courts of this state that a plaintiff relying upon circumstantial evidence is required to produce evidence which excludes, with a fair amount of certainty, every other reasonable hypothesis but the one relied on. Marcel v. DePaula Truck Lines, La.App., 70 So.2d 772; Lanoix v. Home Indemnity of New York, La.App., 13 So.2d 501, and Arceneaux v. Louisiana Highway Comm., La.App., 12 So.2d 733.
For the reasons assigned, the judgment appealed from is reversed and the plaintiffs’ suit dismissed at their costs.
Judgment reversed.