William A. McCLENDON et al.,
Appellants,

v.

T. L. JAMES & COMPANY, Inc.,
et al., Appellees.

No. 15833.

United States Court of Appeals
Fifth Circuit.

April 6, 1956.

Edward Donald Moseley, Baton Rouge, La., E. H. Cunningham, Jr., Barnett, Jones & Montgomery, Jackson, Miss., Benton & Moseley, Baton Rouge, La., for appellants.

Ronald L. Davis, Monroe, La., Ralph M. Kelton, Hopkins Payne Breazeale, Jr., Baton Rouge, La., E. K. Theus, Monroe, La., Breazeale, Sachse & Wilson, Huckabay, Seale, Kelton & Hayes, Baton Rouge, La., Theus, Grisham, Davis & Leigh, Monroe, La., for appellees.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

BROWN, Circuit Judge.

As a part of its postwar rehabilitation program, the Louisiana Highway Department made a contract with T. L. James & Company, Inc., for patching, widening and resurfacing approximately 17 miles of the major, east-west arterial highway, U. S. 80. Actual work was in active progress on a 6-mile portion in the east end of the project. At a point further west and 6 miles beyond the locale of any actual work, there was a bad sunken, broken place in the concrete highway just to the right (north) of the center stripe. This was from normal attrition from long hard use with inadequate maintenance during the war years and, typical of general deterioration, was a condition which the contract project was to remedy.

The plaintiffs in their suit against the Contractor [1] claimed that this hole brought about the head-on collision between the Bounds' vehicle, headed west, and Sergeant Rockovich's eastbound car, which took place on the south (Rockovich) side of the road. The District Court granted [2] a judgment for the defendants notwithstanding the verdict, Fed.Rules Civ.Proc. rule 50(b), 28 U.S. C.A., on the dual ground that the contract imposed no duty which was violated and the plaintiffs failed to prove that negligence, if assumed, was a proximate cause.

1. The plaintiffs comprised McClendon who was injured and the survivors of Bounds, Lambert and Mrs. Osborne, all killed, each of whom was a passenger in the Bounds' automobile. The suit was against the Contractor and its liability insurer, Louisiana Direct Action Statute, LSA–R.S. 22:655; Lumbermen's Mutual Casualty Co. v. Elbert, 348 U.S. 48, 75 S.Ct. 151, 99 L.Ed. 59; Watson v. Employers Liability Assurance Corp., Ltd., 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74.

Sergeant Rockovich was the sole surviving eyewitness.

2. The defendants' motion for an instructed verdict was overruled, and the case submitted to the jury under instructions narrowing Contractor's obligation to that of warning. On the failure of the jury to agree, it was discharged and judgment subsequently entered for the defendants, F.R.C.P. 50(b).

Analysis of the case makes it unmistakable that plaintiffs imperatively require the contract between the Highway Department and Contractor—not only to create a relationship out of which duties might spring but, decisive here—to create the very duties themselves. The facts are undisputed that this highway defect was in no way caused or brought about by Contractor. It had existed for a considerable time and had in no way been altered or magnified or changed by Contractor's work. Nothing which Contractor was doing in the 6-mile work area to the east affected this defect or produced from it a peril to the traveling public any different from that which it would have presented a day, or a week, before the 17-mile project contract commenced or had it, by chance, been located farther west outside of the boundary limits of the 17-mile project.

■ That being so, gauged by the standards of reasonable care *apart* from the contract, what obligations to the traveling public were imposed? None, we think, either to warn or to repair. Of course, in the performance of its contract, the Contractor must carry on the work with reasonable prudence and members of the traveling public are obvious beneficiaries of that requirement. Failure to heed that standard imposes liability on a Contractor where what it has done, or not done, has had instrumental effect in creating the condition out of which the danger comes. Owens v. Fowler, 5 Cir., 32 F.2d 238; Moore Construction Co., Inc. v. Hayes, 5 Cir., 119 F.2d 742; cf. Rosiere v. State, La.App., 50 So.2d 31.

■ But here the Contractor has done nothing. Prudence, as such, does not tell it to do something. If it had to mark the defect, warn against it, temporarily repair it or build up the shoulder for a suitable by-pass, the duty came alone from the contract. But nonperformance (nonfeasance) of such a contract duty owing by the agent to his principal under a contract does not give rise to tort liability against that agent, and, of course, the agent has no contract

liability to a third party not in privity. 38 American Jurisprudence, Negligence, § 21, "A plaintiff in an action for negligence, who bases his suit upon the theory of a duty owed to him by the defendant as a result of a contract must be a party or privy to the contract; otherwise, he fails to establish a duty toward himself on the part of the defendant, and fails to show any wrong done to himself." 27 American Jurisprudence, Independent Contractor, § 52, "* * * in cases of injury to persons who are not parties to the contract, the plaintiff cannot maintain the action on the covenants thereof; the liability, if any, in such a case must be founded on negligence." Where the duty springs from the contract, is a creature of it, it affords no basis for tort liability. Council v. Dickerson's, Inc., 233 N.C. 472, 64 S. E.2d 551; and see Pinnix v. Toomey, 242 N.C. 358, 87 S.E.2d 983; 38 A.L.R. 487–491. This much is recognized even by those openly critical of the rule of nonliability for nonfeasance, see, e. g., United States v. Hull, 1 Cir., 195 F.2d 64, 69, "In the case of an agent or servant, so far as his nonperformance of his undertaking amounts to no more than a breach of contract, of course his liability is only to the employer"; Prosser on Torts, 1941, § 33, page 205, "A better statement of the principle is that if a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not." Neither 38 American Jurisprudence, Negligence, § 20; Article 2316, LSA–Civil Code; Savoie v. Walker, La.App., 183 So. 530; Moses v. Butts, La.App., 70 So.2d 203, nor Lawson v. Shreveport Waterworks Co., 111 La. 73, 35 So. 390, are to the contrary. Each assumes, whether stated in common law terms of negligence or the code language of fault, that the contract has given rise to a relationship out of which duties to third parties arise by reason of law in which case, assuredly liability exists without inquiry as to its passive or active nature. But "* * * The true question always is, has the defendant

committed a breach of duty apart from the contract. If he has only committed a breach of the contract, he is liable only to those with whom he has contracted; but, if he has committed a breach of duty, he is not protected by setting up a contract in respect to the same matter with another. * * *" House v. Houston Waterworks Co., 88 Tex. 233, 31 S.W. 179, 181, 28 L.R.A. 532.

This makes an excursion into the contract terms and their interpretation unnecessary, although the process makes the result doubly sure. The plaintiffs take certain contract[3] terms requiring contractor to maintain traffic and adequate warning devices as the basis for their further claim that this established a standard of care, created duties owing to them as members of the public, the breach of which would cast contractors in liability. Gaining momentum from factual elaboration, the claim then expands to the contention that wherever, within the project limits, long-standing, pre-existing defects of the highway create hazards to travelers permitted to use the roadway, the contractors had the duty of using reasonable care to mark, warn, barricade, temporarily repair or make suitable improvisations to make it safe for traffic. At least, they say, the jury could have so construed the contract.

■■ But the contract, in writing, with no factual controversy for jury determination, was for the court to construe, Sea Insurance Co. v. Johnston, 5 Cir., 105 F. 286, 289, 290, 292; Goddard v. Foster, 17 Wall. 123, 21 L.Ed. 589;

---

3. The contract is a standard form covering a highway project in great detail, is approximately 58 pages in length, and incorporates Division I of the Standard Specifications comprising another 45 pages. Principal reliance is placed on excerpts from page 4:

"Maintenance of traffic: The contractor will be required to provide for and maintain through and local traffic at all times during the construction of this project * * *

* * * * *

"Specific reference is made to Articles 7.07 and 7.08 Division I of the Standard Specifications. Adequate barricades, warning signs and lights shall be provided at all times."

The following excerpts from Division I emphasized are:

"7.07. Public Convenience and Safety: * * * The convenience of the general public, the residents along and adjacent to the highway and the protection of persons and property are of prime importance and shall be adequately provided for by the Contractor

* * * * *

"When the highway under construction is open to the traveling public, the contractor shall maintain both the subgrade and the surfacing in such condition that the public can travel over same in comfort and safety and shall at his own expense blade and drag the subgrades and all courses adapted to such treatment, when and as directed by the engineer. To accommodate traffic on the roadway under construction, the contractor shall provide and maintain in a passable condition all by-passes * * *. During the progress of the work, the contractor shall provide for local traffic to private property * * *.

"7.08. Barricades, Danger, Warning and Detour Signs: The contractor shall provide, erect and maintain all necessary barricades, suitable and sufficient red lights, danger signals and signs, provide a sufficient number of watchmen and take all necessary precautions for the protection of the work and workmen and safety of the public. * * *

"The contractor's responsibility for the maintenance of barricades, signs, and lights shall not cease until the project shall have been completed and accepted * * *."

"4.05. Traffic: " * * * When specifically provided by the contract that traffic shall be routed over the project during construction, the contractor shall maintain the portion under traffic at his own expense * * *. When the road under construction is to be kept open for the use of the traveling public, special attention shall be paid to keeping both the subgrade and newly laid surfacing in such condition that the public can travel the road in safety. As soon as possible after rains, and at other times when directed the contractor shall at his own expense machine the subgrade and drag and machine the newly laid surfacing material. The contractor shall be responsible for the convenience and safety of the traveling public."

General Motors Corporation v. Abell, 1 Cir., 292 F. 922, 926, certiorari denied 264 U.S. 583, 44 S.Ct. 332, 68 L.Ed. 861; Floyd v. Ring Construction Co., 8 Cir., 165 F.2d 125, 131, certiorari denied 334 U.S. 838, 68 S.Ct. 1496, 92 L.Ed. 1763; Levy v. Gadsby, 3 Cranch 180, 7 U.S. 180, 2 L.Ed. 404, 406; Sherwood Distilling Co. v. Reconstruction Finance Corp., 4 Cir., 201 F.2d 42, 46. In that search the anxiety of the court, from reading it as a whole and considering the inherent reasonableness or unreasonableness of possible alternatives, is to determine the intention of the parties to the contract. Wier v. Texas Company, 5 Cir., 180 F.2d 465.

[7] So viewed, we cannot believe that Contractor intended to take on, or that the Highway Department intended to impose, these far-reaching obligations. The obligation to "provide for and maintain through and local traffic at all times during the construction of this project" was to make certain that the highway would not be closed during the work. This was, of course, of great importance in determining the proposed plan for doing the work and its effect on the Contractor's estimate and bid. It further meant that as the work was being done with the traffic flow left open, the Contractor should exercise due care, by suitable warning devices, temporary or improvised by-passes or the like, to afford reasonably safe passage to the traveling public. Whenever, then, the contractor's work, completed or in progress, gave rise to a likely hazard not otherwise existing, it would impose the burden of these contract obligations on the Contractor. Such provisions in the contract and Standard Specifications as those relating to keeping one-half of the roadway and all intersections open, construction materials off of traveled portions, specifying intervals (1320 feet) to be kept between work simultaneously done in one lane, the machining and dragging of the subgrade and newly laid materials, and the like, furnish intrinsic proof that the maintenance and the warnings related to those portions and the adjacent areas of the project on which the Contractor was, or had been, engaged in actual operations. Conversely, with respect to portions not yet worked on, the Contractor had no contractual duty of maintenance, repair, or warning. As to any such portions, its duties were those, and only those, imposed generally by law.

If there is any difference, see United States v. Hull, Prosser on Torts, supra, in the significance of a failure to perform the contract obligation to maintain, i.e., repair, and that for failure to warn the traveling public, we think there is no basis for finding an intention that Contractor was undertaking an obligation to warn of longstanding defects and dangers of the same kind as those encountered outside of the project limits, and which were in no way related to, affected by, or in the area of its actual operations. Thus, the contract was not an undertaking to provide warnings generally throughout the project limits, so we are not concerned with the right of a third party to recover against the agent (Contractor) for nonfeasance of such a specialized contractual duty. See Restatement of the Law, Agency, Section 354. Cf. Lawrence Warehouse Co. v. Defense Supply Corp., 9 Cir., 164 F.2d 773, footnote 2, at page 776, Id., 9 Cir., 168 F.2d 199, Id., 336 U.S. 631, 69 S.Ct. 762, 93 L.Ed. 931, on second appeal Capitol Chevrolet Co. v. Lawrence Warehouse Co., 9 Cir., 227 F.2d 169.

Moreover, assuming negligence, the proof failed to meet the Louisiana standard [4] for establishing causal relationship by circumstantial evidence

4. Marcel v. De Paula Truck Lines, La. App., 70 So.2d 772, 781: "The plaintiff, relying solely upon circumstantial evidence to show negligence and recover damages against the defendant, is required to produce such evidence which must exclude every other reasonable hypothesis that the accident and damages resulted as * * * contended. * * * See 38 Am.Jur., page 1033 and La Noix v. Home Indemnity Co. of New York, La. App., 13 So.2d 501."

—essential here since the version of Sergeant Rockovich, the only living eyewitness, if not actually contradictory of the plaintiffs' theory, since he testified that all he saw was, just before the crash, a truck approaching from the east, certainly failed to show any direct relationship between the hole in the pavement and the collision. The plaintiffs' theory is that in an effort to avoid the hole, the Bounds' car had to leave the paved slab and, because the dirt shoulder on the Bounds' side was two to six inches below the surface of the concrete, the vehicle was caused to swerve out of control back onto the concrete slab over on to the south half in the path of the oncoming Rockovich car. To establish this theory, the plaintiffs offered evidence showing skid marks some 40 feet west of the defect; the skid marks from the right wheel started from the north edge of the pavement indicating that the right wheels had been on the shoulder immediately before, and these skid marks extended over into the debris at the point of impact about 125 feet west of the hole.

As we pointed out in Smith v. General Motors Corp., 5 Cir., 1955, 227 F.2d 210, 213, applying Florida's standard which is no less stringent than Louisiana's, "If we conclude, * * *, that [plaintiff's] hypothesis * * * is no more probable than one of several others, * * * we must affirm, because the court should * * * not have submitted the case to the jury." One seeking to recover must be able to show that the cause imposing liability is more reasonable than other likely causes. There is nothing in this circumstantial evidence to indicate that the likelihood that the collision took place because of this hole in the pavement is any greater than that it occurred from human failure, a momentary loss of control of the car by the driver, momentary lapse in attention, speed of the Bounds' car, an effort to pass a truck when time and distance did not permit, swerving onto the shoulder as a reflex response to such an emergency, or many other equally likely reasons. True, it *may* have happened from the right wheels dropping into a rut on the depressed shoulder in an effort to evade the hole in the pavement. But it might have happened from any one of many other equally reasonable causes and human failures which, "as reasonable men, we all know greatly preponderate as the cause of automobile accidents." Smith v. General Motors, supra. The proof was thus inadequate.

There was nothing for the jury. Entry of judgment for the defendants was right, Strawn v. Travelers Insurance Co., 5 Cir., 200 F.2d 778, 779, and the case must be

Affirmed.