HOOD, Judge
(dissenting).
I cannot agree with some of the conclusions reached by the majority of the court in this case. The majority concluded, for instance, that in hauling dirt to repair the shoulders of the road the machinery and vehicles used by Johnson entered the highway at the point where this accident occurred. My interpretation of the evidence is that the machinery and vehicles used by Johnson did not enter the highway at that point, but, instead, entered it at least 200 or 300 yards from the place where the eol-lision occurred. The evidence, in my opinion, does not justify a conclusion that the machinery or vehicles used by the contractor, or its subcontractor, caused or enlarged the break in the pavement or the rut which ran along the edge of the pavement at that point. While it is true that the shoulder of the highway there had been repaired or reconstructed more than four months prior to the time of the accident, that work had been completed and no other work on the highway had been commenced or was in progress. The highway had been used continuously during that time and, although there is some testimony to the effect that the concrete portion of the highway was in worse condition after the shoulders had been repaired than it was before, it seems to me that a considerable amount of speculation is required in order to arrive at the conclusion that either the break or the rut was caused by the contractor or its agents.
The law, as I understand it, is that whenever the contractor’s work, completed or in progress, gives rise to a likely hazard in a public road not otherwise existing, a duty is imposed on the contractor either to re *260 move the hazard so that it becomes reasonably safe or to give adequate warning to third persons of its existence. In this case the evidence does not show that the contractor’s work gave rise to the alleged hazard, and consequently I feel that no duty was imposed on it either to make repairs or to warn motorists.
Assuming, however, that the work of the contractor did cause or give rise to the break in the concrete and the rut along the edge of the slab, and that defendants’ delayed plea of contributory negligence cannot be considered, it appears to me that the negligence of the contractor in failing to repair these defects or to erect warning signs cannot be considered as a proximate cause of this accident. Plaintiff testified that he traveled this road frequently, that he was familiar with this portion of the highway, that he knew this break in the concrete was there, and that he saw the hole as he approached it prior to the time he attempted to drive across it. He testified that he attempted to drive over this break while driving at a speed of about 20 miles per hour, but that his right rear wheel slid off the paved portion of the highway onto the shoulder, and that he thereupon lost control of his car. The state trooper who investigated the accident testified that both of the right wheels of plaintiff’s car ran off the concrete slab into the rut which existed along the edge of that slab, that the steel undercarriage of the car then was dragged along the pavement a distance of about 20 feet, that plaintiff then pulled his car back onto the highway and collided with an oncoming vehicle, that plaintiff was thrown out of his car, and that his car then continued to travel a distance of 290 feet into a barrow pit.
These facts indicate to me that the sole proximate cause of the accident was the negligence of plaintiff in failing to maintain proper control over his automobile, and that any negligence on the part of the defendant contractor in failing to warn plaintiff of the defects could at best constitute only a remote cause.
In my opinion this case is analogous to McClendon v. T. L. James & Co., 5 Cir., 231 F.2d 802, which was cited in the majority opinion. In that case the demands of the plaintiff were rejected because plaintiff failed to prove actionable negligence on the part of the contractor. The majority distinguishes that case from the instant suit by stating that there the broken pavement was in a portion of the highway on which the contractor had not commenced work, while in this case “the defects were brought about by the contractor, and they had come into existence during and after the dirt work was commenced.” As has already been pointed out, I do not feel that the evidence justifies the conclusion that the defective condition of the highway shown in this case was brought about by the contractor, and the fact that some dirt work on the shoulder of the highway had been completed several months prior to the time of the accident does not in my opinion make this case different in principle from the McClendon case.
The case of Harvey v. Great American Indemnity Co., La.App. 2 Cir., 110 So.2d 595, 601, involved a motor vehicle collision between plaintiffs’ automobile and a truck driven by Fred Ford on a public highway which was being widened and resurfaced. Shortly before the accident occurred, that portion of the highway had been covered with a hot mix asphalt preparation, and that condition coupled with a rain which occurred thereafter caused the highway to become very slippery. The road contractor, Winford, was named as a party-defendant in the suit. The court held that since the driver of the truck was aware of the slippery condition of the highway the failure of the contractor to give warning of that condition did not constitute a proximate cause of the accident. In so holding, the court said:
“It is indeed well settled in our law of negligence that unless an act either of commission or omission can be said to be a proximate cause of resulting *261 injury, it does not afford a basis for liability. * * *
******
“In our opinion the only negligence which may be chargeable to Winford must be predicated on failure to warn unsuspecting motorists of a dangerous condition existing on the roadway. The evidence conclusively shows Win-ford conformed to the specifications prescribed in his contract as to the application of the asphalt material to the surface of the highway, and the road was open to the public by direction of the State Highway Department. Therefore, there was no breach of general obligation to the public by Winford unless it was due to failure to give adequate warning to motorists of the road condition. In this respect it is proper to examine the evidence in order to ascertain if Ford did know or should have known of the condition of the road óf which he complains.
“We think Ford was fully cognizant of the condition of the highway from the time he first applied his brakes and at which time he was more than 600 feet distant from the locus of the accident. He had traversed the road in both directions on his several trips on that very day and he could not have failed to observe a sign at the southern end of the repair work warning travelers toward Homer of fresh oil on the surface of the highway. * * * For these reasons we think that the sole and proximate cause of the accident was the act of Ford in driving too closely behind the Mercury with full knowledge of the existing road conditions and in our opinion Winford should be absolved from liability.” (Emphasis added.)
The rule applied in the Harvey case, I think, should be applied here.
In my opinion the majority further erred in holding that since plaintiff has neither appealed nor answered the appeal “we are unable to interfere with the judgment below as far as it is concerned with quantum of damages.” The appellants specifically ask that the amount of the award be decreased in the event they are held to be liable. While it is true that since no answer to the appeal was filed by plaintiff we could not consider increasing the award, we do have authority to and should consider the plea of appellants that thé award be decreased.
For these reasons I must respectfully dissent from the conclusions reached by the majority.