This suit arises out of a collision between two automobiles on September 18, 1940, shortly after 11 o'clock P.M., on the paved highway between Plaquemine and White Castle. One of the automobiles was owned and driven by Elmo J. Lanoix, being a 1940 Plymouth coupe, and was travelling south from Plaquemine in the direction of White Castle; young Lanoix being accompanied by a young lady named Dorothy Leblanc. The other automobile, a 1939 Ford, was owned and driven by Alva J. Edwards and was travelling north from White Castle in the direction of Plaquemine. Edwards was accompanied by a man named Edward Bergeron. As a result of the collision the drivers and passengers in both automobiles were instantly killed. The highway, at the scene of the accident runs north and south and the pavement is straight and level for more than a mile in either direction, and eighteen feet in width.
This suit is on behalf of the parents of Elmo J. Lanoix, and is against the Home Indemnity Company of New York, the insurance carrier of the Edwards' automobile. Plaintiffs allege that their son was operating his car in a slow and careful manner and on his right hand side of the road when he was suddenly run into by the automobile driven by Edwards. The plaintiffs charge Edwards with negligence in operating his automobile at an excessive speed at night and in suddenly swerving his automobile across the center line into the path of and striking the Lanoix automobile. The defendant denies any negligence on the part of Edwards, and charges that the accident was caused solely by the negligence of young Lanoix in driving his car at an excessive, *Page 502 
negligent and illegal rate of speed on his wrong or left hand side of the road and as a result thereof running into the Edwards automobile. In the alternative, the defendant pleads contributory negligence on the part of young Lanoix.
The trial judge rendered a judgment awarding to each plaintiff the sum of $3,000 or a total of $6,000. Defendant has appealed. The plaintiffs have answered the appeal and ask that the judgment be amended by increasing the award to each to the amount of $5,000, or a total of $10,000 and by entering a non-suit for the funeral expenses claimed.
There were no eye witnesses; the case was tried and decided on the physical evidence and other circumstances surrounding the accident. The case depends purely on circumstantial evidence.
The record contains the testimony of several persons who visited the scene of the accident immediately after its occurrence, and, from their testimony, we gather that the two left front wheels and fenders of the automobiles came in contact with each other, being interlocked when found, both being bent backwards. The automobiles came to rest facing each other in a 45° angle with reference to the highway, the Ford facing in a northwest direction and the Plymouth in a southeast direction. The Plymouth's rear right wheel was about 12 or 14 inches off of the pavement, the left rear wheel on the pavement; the right front wheel was about one foot from the west curb, on the pavement, and the left front wheel about two feet west from the black center strip; it was upright. The Ford was not upright, but was lying on its left side; the front portion of the hood was lying west of the center line, the left front fender and wheel were interlocked with the left front fender of the Plymouth. The wheels of the Ford were in such a position that when the Ford was set in an upright position the left front and rear wheels were about eighteen inches east of the center line, thus both automobiles, when in an upright position, were occupying their respective lanes of travel.
The preponderance of the evidence is that there were no skid marks made by either one of the automobiles, prior to the collision, irrespective of the fact that one of the witnesses testified that he traced tire marks made by the Plymouth. This witness gave a statement to an insurance investigator a few days after the accident in which he states that he looked for tire marks and failed to find any.
The gasoline tank of the Plymouth was found some fifteen or twenty feet to the rear of the Plymouth car and on the shoulder of the road. One of the witnesses attempted to explain how the gasoline tank happened to be so situated, stating that he ordered the tank to be removed. This witness testified on three different days or occasions. On the first two occasions, that is, on November 13 and November 24, 1941, this witness positively states that he did not see the gasoline tank of the Plymouth car, yet on April 29, 1942, he seeks to give the explanation that he found the gasoline tank some three or four feet behind the Plymouth, with some gasoline spilled on the pavement and ordered someone to remove it for safety purposes. He is not corroborated by anyone. He does not name the person to whom he gave such orders and who removed the tank. It is our opinion that this tank was removed from the Plymouth by the blow or the accident and was deposited where found, by the blow.
There is some evidence to the effect that oil spots were on the east side of the center line of the pavement, that is, a large oil spot or burnt spot near the center line, a fan-like spray of oil leading from near the center line to the east for about four feet; and that about eight feet to the north of where the cars came to rest, beginning at the east curb of the pavement, and extending towards the center, in the nature of an arc, for about five to six feet, there was a heavy skid mark. On the west side, there also appeared a deposit of oil at about the center of the west lane of travel. There were masses of broken glass on both sides off of the pavement, out on the brim.
When the first witnesses arrived at the scene, the Ford was burning and the Plymouth was about to catch on fire. There is evidence of the fact that the young lady companion of Lanoix was lying near the rear of the Plymouth, on the brim or shoulder of the road, and that Lanoix was in the car. Other witnesses testified that they removed the bodies from the Plymouth. However, the fact remains that both died within a few minutes and were removed to points of safety. The bodies of the occupants remained in the Ford until the fire had been extinguished by the fire truck from Plaquemine. In order to remove *Page 503 
the bodies therefrom, it was necessary to unlock the cars and push back the Plymouth, then set the Ford upright. After the Ford was set upright, the Ford was in its proper lane of travel with its left wheels about eighteen inches east of the center line. The Ford, after the removal of the bodies, was then turned over once or twice to get it off of the pavement. Likewise, the Plymouth was turned over in order to get it off of the pavement. These acts may account for the fact that broken glass was found on each shoulder of the pavement. Likewise, the burning and turning over of the Ford may account for some of the spots and burned metal shown directly on the center line.
It is evident from the condition of both cars that both must have been travelling at a high speed when approaching each other.
This being a case based purely on circumstantial evidence, we understand the rule governing such cases to be that "in view of the fact that the burden of proof is on the plaintiff, such circumstances must be ample and must appear from the evidence. Moreover, the evidence must not leave the causal connection a matter of conjecture; it must be something more than consistent with plaintiff's theory as to how the accident occurred. Where the proof of causal connection is equally balanced, or the facts are as consistent with one theory as with another, plaintiff has not met the burden the law casts upon him". 38 Am.Jur., page 1033, § 334 under the title "Negligence".
It is our understanding of the jurisprudence of this state that where circumstantial evidence is solely relied upon to show negligence on the part of defendant and to recover damages, such evidence must exclude every other reasonable hypothesis but the one relied upon. See Arceneaux v. Louisiana Highway Commission, La.App., 12 So.2d 733, 735, and the cases therein cited.
The plaintiffs definitely and categorically allege that their deceased son was driving in his proper lane of travel and that the driver of the Edwards car suddenly swerved across the black line on the highway and struck the car operated by their deceased son. In other words, the contention or theory of the plaintiffs is that their son was driving well into his lane of travel, and that the driver of the Edwards car was also driving in his proper lane, and the accident was caused by the sudden driving of the Edwards car into decedent's lane of travel. If such were the proven facts, there would be no question of liability by the defendant. We find no facts to justify such conclusion.
The judge of the lower court, however, disregarded the contention or theory of the plaintiff and formulated his own theory to the effect that the decedent Lanoix was driving south on his extreme right hand side of his lane of travel, in fact, his right wheels were almost off of the pavement slab; that the Edwards car was travelling north on the same lane of travel of Lanoix, at a greater speed than Lanoix, and on observing the Lanoix car in his path the driver of the Edwards car "hurriedly turned his steering wheel and attempted to make a quick right turn to get on his right hand side or east half of the pavement. During the execution of this sudden sharp turn to the right while driving northward at a fast rate of speed the Ford began to topple toward the west or its left, and then and there the left front wheel and axle of the Ford struck the left front wheel and axle of the Plymouth". What facts or circumstances, shown or proven in this record, justify such a conclusion of fact by the trial judge, we are at a loss to understand. If his conclusions of facts were correct as to the Ford travelling and occupying the west, or the Ford's left lane of travel, and the execution of such an abrupt right hand turn, and the Plymouth was travelling to its extreme right hand side, there would be no question as to liability.
The only expert evidence as to how the accident occurred is the testimony of Dr. Hamilton Johnson, a professor and head of the department of mechanical engineering at Louisiana State University, which was introduced by the defendant. His theory of the accident is as follows:
"Taking into account the various items of physical evidence, it seems clear to me that the Ford car, moving north along the road, had run off the edge of the pavement, the driver apparently seeing the imminence of a collision: That the right rear wheel of the Ford car was grinding against the edge of the concrete, causing the dark skid mark on the vertical face.
"At the instant of collision the left front wheel of the Plymouth engaged the left front wheel of the Ford car and jerked the front of the Ford car violently around toward the center of the road: *Page 504 
That in so doing the steel rim of the right front wheel of the Ford was dragged heavily against and over the corner of the eastern edge of the pavement, breaking out the chip to which I have referred, and then was dragged heavily around, the car pivoting about its right rear wheel which was jammed against the edge of the pavement so as to cause the circular skid mark to which reference has been made.
"That when the Ford car had swung around until it was at an angle of 45 degrees or so with the pavement the forward momentum of the Plymouth, exerted at a point three or four feet above the pavement, was sufficient to cause the Ford car to begin to overturn, thus lifting the right wheel from off the pavement and causing the skid mark to end.
"During the overturning process and after the Ford had turned over onto its side, the momentum of the Plymouth car seems to have been sufficient to drive the Ford backward, south along the pavement some seven or eight feet. As the Plymouth was pushing with its lefthand front wheel against the Ford car, and the tendency of the center of gravity of the Plymouth was to keep travelling parallel to the center of the road and its left front corner was prevented from so travelling, it necessarily swung around with its rear end toward the west edge of the road and finally came to rest with its right wheel off the road in the position which counsel assumed.
"The sharp dent in the top of the Ford car shows conclusively that the Plymouth continued to push heavily against the Ford car after it had been overturned.
"The heavy oil splash just south of the skid mark would indicate that at the instant of collision or just an instant after collision the oil pan of the Ford had been crushed in such a manner as to spill the oil out on the pavement, and the line of this oil splash is practically parallel to the circular skid mark.
"The fact that all of the marks on the pavement are several feet north of the final position of the cars after the accident as assumed in counsel's question would indicate that the momentum of the Ford car was — of the Plymouth car was very considerably greater than that of the Ford car, as otherwise the final position of the cars would have been north of the physical evidences of collision."
The theory of the Professor is about as convincing as the other two theories advanced and discussed supra.
The fact that the cars came to rest at the place and in the manner described above, that is, the Lanoix car entirely on the west side of the center line of the pavement and a part of the front portion of the Ford, on its side, on the same side, is not conclusive that the accident happened at that point, and it does not prove that the respective cars were occupying the west lane of travel prior to and at the time of the collision. We cannot overlook the fact that when the Ford was upright the Ford was in its proper lane of travel.
Due to the antics motor vehicles will commit or do in accidents, it is impossible for us to come to any definite conclusion as to how this unfortunate accident which cost the lives of the four occupants of the two automobiles happened.
For these reasons assigned, the judgment appealed from is avoided, annulled and reversed, and it is now ordered that plaintiffs' suit be and the same is hereby dismissed at their costs.