184 So.2d 107 (1966)
Mrs. Esther Ann Ratcliff LAMBERT and Jake Lambert, as administrator for and on behalf of his minor child, Jeffery Edward Lambert,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Aetna Casualty & Surety Company and American Employers' Insurance Company.
No. 2115.
Court of Appeal of Louisiana, Fourth Circuit.
March 7, 1966.
*108 Landrieu, Calogero & Kronlage, Pascal F. Calogero, Jr., New Orleans, for plaintiff-appellee.
Francis G. Weller, of Deutsch, Kerrigan & Stiles, New Orleans, for defendant-appellant American Employers' Ins. Co.
Before McBRIDE, SAMUEL and BARNETTE, JJ.
McBRIDE, Judge.
After a jury trial plaintiff, Mrs. Esther Lambert, recovered judgment for $10,000.00 and her husband, plaintiff Jake Lambert, for the use and benefit of their minor son Jeffery, was awarded judgment for $100.00, against the defendant, American Employers' Insurance Company, which has appealed from that portion of the judgment.
On November 10, 1963, Jake Lambert was driving his automobile in which his wife, the above named minor, and another child were passengers. The automobile traveled in the left inbound lane on Old Gentilly Highway in New Orleans. About 4:45 p. m., on a curve in the vicinity of the entrance to the Michoud plant complex Lambert lost control of his vehicle while traversing a portion of the highway which was under water as a result of the prevailing heavy rainfall and his vehicle slipped and skidded into the outbound lane colliding headon with an automotive truck traveling in the opposite direction. By this suit Mrs. Lambert sought to recover damages for personal injuries she sustained, and Lambert, on behalf of his son Jeffery, endeavored to recover damages for the child's injuries.
American Employers' Insurance Company, which is sued directly, is the liability insurer of Pratt-Farnsworth, Inc., a subcontractor, *109 engaged in performing certain construction work (laying a pipeline) on the Michoud plant property. Plaintiffs allege the aforementioned accident and the injuries to Mrs. Lambert and the child were occasioned by reason of the negligence of the employees of said subcontractor during the course of the construction work. It is contended that in backfilling the trench in which the pipeline was laid they permitted a mound of backfill earth 2 feet in height to remain above the surface of the earth along the pipeline and also permitted mud which had been taken from the trench in which the pipe was laid and which had not been used for backfill to remain in 6 or 7 feet piles. Plaintiffs claim the piles of earth and the mound above the pipeline had the effect of preventing the water to drain off Gentilly Highway and flow to a low portion of the adjoining Michoud property, thus causing a concentration of water on the highway which would not have existed had the mounds and piles of mud not retarded its flow.
Lambert testified that the water which he attempted to negotiate was the sole cause of his losing control of his vehicle. While the allegation is made by plaintiffs that mud was also on the highway resulting from the activities of Pratt-Farnsworth, Inc., which enhanced the hazard, there is no evidence in the record to connect the work done by said subcontractor with the mud; the testimony seems to be to the contrary.
Various witnesses testified that on the day of the accident it had "poured rain", that hard rain had fallen for two hours, that it was a good hard rain, and there was "a flash flood". The New Orleans police officer who investigated the accident shortly thereafter said that it had rained hard all day and he characterized it "a fairly hard rain" and "a very constant rain". Rain fell throughout the police investigation.
Eight witnesses, including Lambert himself, testified that the roadway at the locus in quo usually became flooded whenever there was heavy rainfall. Four of these witnesses asserted that the quantity of water at the accident site on the day of the collision was no greater than they had seen it on occasions before and after the performance of the work by Pratt-Farnsworth, Inc. However, it may be mentioned that some witnesses stated they had never before seen the full width of the highway flooded and that usually water only covered the north half of the highway, or that portion thereof farthest away from the Michoud plant. According to the investigating officer the accumulation of water covered the highway from shoulder to shoulder for a distance of half a block. Its depth at the point of collision was variously estimated by the witness to range from 1½ inches to "a little below the knee". The officer stated that the contact between the automobiles "appeared to be directly in the center of this water".
Pratt-Farnsworth, Inc., as subcontractor, undertook to install subsurface pipe on the Michoud property on a line 40 feet removed from and paralleling Old Gentilly Highway. In order to imbed the pipe in the earth it was necessary to dig a trench the size of which varied with the diameter of the pipe, the maximum being 6 feet deep and 6 feet wide. As the crane dug the trench it would deposit the spoil in piles 6 or 7 feet high on a line between and paralleling the trench and the highway and about 15 feet removed from the trench. After the crane laid the pipe in the open trench, the front-end loader which followed would backfill the spoil. Employees of Pratt-Farnsworth, Inc., testified that all pipe laid in any one day was on that very day backfilled so that no part of the trench remained unfilled over night. The backfilling created a mound 2 feet high over what had been the trench. There is some controverted evidence as to whether the workmen left some piles of dirt which had not been utilized in backfilling, but for *110 the purpose of this opinion we will not endeavor to unravel the conflicting testimony but will take it, for the purposes of discussion, that such piles were permitted to remain. The accident happened on a Sunday when no one was working.
It is said by plaintiffs that the abnormal inundation of the roadway constituted a hazard affecting the motoring public. It is argued that the employees of Pratt-Farnsworth, Inc., in permitting the mound and piles of mud to exist without openings cut therein to permit the flow of water, amounted to gross negligence which proximately caused the injuries to Mrs. Lambert and her child, all of which should have been foreseen or anticipated.
Pretermitting a discussion of the question of negligence, foreseeability, and proximate cause, we are initially and foremost concerned with whether the mound and the piles of mud complained of actually did cause an unusual quantity of water to accumulate on the Old Gentilly Highway.
The collision occurred about midway of a dip half a block long which existed in the highway. The water covered that portion of the highway constituting the dip. The topography of the surface of the earth from the south edge of the highway at the point of the accident to well within the Michoud property is depicted on maps and charts and shown by testimonial evidence. The elevation at the edge of the paved highway is 3.8 feet or 3.9 feet mean sea level. Moving southward a depression 3.0 at one point and 3.5 at others is found. Then southward to the site of the pipeline the earth's surface gradually rises to approximately 4.0 feet and at some points 4.6 feet. Beyond the pipeline the ground falls off sharply to 0.0 feet mean sea level. This area is described as a "drainage ditch or canal or outfall" by one of the witnesses and into this plaintiffs contend the water should have flowed. So, between the 3.8 or 3.9 elevation at the edge of the highway and the mound over the pipeline the earth's surface dips then rises to 4.0 feet at some points and 4.6 at others thus creating a shallow basin or pocket. The higher ground toward the plant building has the effect of making the basin or pocket capable of impounding water.
There is not a single witness who testified, nor is there any evidence whatsoever, as to how far onto the Michoud property the sheet of water which covered the highway extended. If the water did spread back as far as the mound and the disputed piles of dirt, there is no showing to that effect, and in the absence of such showing we can not say that anything done by Pratt-Farnsworth contributed in any degree toward creating the unusual condition on the highway. It was incumbent on the plaintiffs to first show that the work of Pratt-Farnsworth, Inc., interfered with the flow of water and that the mound and mud piles caused the trapping of the rainwater between them and the highway. A holding to the effect that the activities of Pratt-Farnsworth, Inc., influenced the flooded condition would not be based on evidence as there is none to that effect, but would be based on pure conjecture and surmise.
It can not escape our notice that there was a culvert situated some 600 feet (in the direction of Canal Street) from the point of the accident, which ran under the highway and was apparently intended to drain rainwater from the south side of the highway to the north side where there is a deep ditch. The evidence is that at the time of the accident and even before Pratt-Farnsworth, Inc., commenced its job, this culvert was choked with weeds and silt. If conjecture is to be indulged in, would it not be reasonable to say that the blockage of this culvert was instrumental in preventing the water on the south side of the road from flowing beneath the highway to the deep ditch on the north side?
We can readily understand why no one paid any attention to the expanse of the *111 water with reference to the Michoud property. Everyone on the scene, during the heavy rain prevailing was solely interested in seeing to it that the injured persons were being taken care of and placed in an ambulance. The investigating police officer's testimony on cross-examination tells the story:
"Q. Did you look at the side of the road to see if there was anything that might be responsible for the flooded condition?
"A. No, sir.
"Q. You didn't look?
"A. No, sir."
Plaintiff can find no comfort in this testimony of the plant engineer adduced on direct examination:
"Q. Returning to my question, what would be the effect of a mound of earth say two feet high north of this forty foot line, what would be the effect of a mound of earth on the drainage of this area, given a heavy rainfall?
"A. It would tend to act as a barrier from drainage going from either side of the mound to the other. Actually in this area it would tend to confine the water to an area between the mound and the higher point in this area which would probably be somewhere along the center of the highway."
and that on his cross-examination:
"Q. Mr. Gordon, did I understand you to say that given that hypothetical question of a two foot mound that that mound would serve to holdwith respect to the north side of the moundthat mound would tend to hold water between the mound and the highest part of the road?
"A. Yes."
All that the witness said was what everyone knows and that is that a two foot mound of earth could confine water to a particular area. But the witness did not testify that on the Sunday afternoon in question the mound did actually restrain the sheet of water covering the highway.
The Courts of this State have many times declared that probabilities, surmises, speculations and conjectures can not be accepted as sufficient grounds to justify recovery to a plaintiff who is charged with the burden of proof. Crier v. Marquette Casualty Company, La.App., 159 So. 2d 26 (cert. den.); McCain v. Pan-American Petroleum Corporation, La.App., 142 So. 375; reinstated on rehearing 146 So. 331.
The burden is upon a plaintiff to show a causal link between his damages and the alleged negligence of the defendant. If the negligence alleged was not a cause in fact of the harm complained of, or if it was not a substantial factor in bringing the harm about, or if the evidence fails to show that it was more probable than not that the accident would not have occurred but for the alleged negligence, then plaintiff has no right to recover. Perkins v. Texas & New Orleans Railroad Company, 243 La. 829, 147 So.2d 646.
Where circumstantial evidence is solely relied upon to show negligence on the part of a defendant, such evidence must exclude every other reasonable hypothesis. Arceneaux v. Louisiana Highway Commission, La.App., 12 So.2d 733; Gomez v. Granberry, La.App., 89 So.2d 454; Marcel v. De Paula Truck Line, La.App., 70 So.2d 772; Lanoix v. Home Indemity Co. of New York, La.App., 13 So.2d 501; McClendon v. T. L. James & Company, 5 Cir., 231 F.2d 802.
The judgment in this case is woefully unsupported by evidence and we see no difficulty in holding it to be manifestly erroneous.
*112 Although a jury's verdict is entitled to great weight, an appellate court is under the duty of passing upon the facts as well as the applicable law in a civil case and the Court is duty bound to set aside the verdict of the jury if manifest error has been committed on questions of fact. Const.1921, Art. VII, § 29, as amended; Crier v. Marquette Casualty Company, supra; Thrash v. Continental Casualty Co., La.App., 6 So.2d 75.
And we might add appellate courts should be swift to set aside any judgment wholly unsupported by evidence in cases involving facts.
For the reasons above assigned those portions of the judgment which run in favor of Mrs. Esther Ann Ratcliff Lambert and Jake Lambert as administrator for and on behalf of his minor child, Jeffery, be and they are hereby reversed and set aside, and the judgment appealed from is amended so as to provide that there be judgment in favor of American Employers' Insurance Company against said named plaintiffs dismissing their demands at their costs; as thus amended and in all other respects, the judgment is affirmed. Plaintiffs are cast for the costs of this Court.
Reversed, amended and affirmed.