BAILES, Judge.
Luria Brothers and Company, Inc. (Luria), a scrap metal broker, instituted this action against Capitol Steel, Inc., as successor to Mike Safer Company, Inc. (Safer), a scrap metal dealer, to recover money advanced to Safer against future “suitable and acceptable” shipments of scrap iron, steel' and other metals. The petition alleges advances totaling $35,614.49 and credits for delivered scrap material in the amount of $13,531.01, and claims the balance of $22,079.48. Defendant answered admitting that advances were made and credits given but denied the amounts claimed.
By reconventional demand, Safer claimed Luria was indebted to it in the sum of $70,270.34. The demand was based on allegations that Luria appointed Safer *631 its “exclusive franchise dealer in scrap materials in the Baton Rouge area” and Safer accepted the appointment; that, pursuant to a request by Luria, Safer expended $48,442.75 to increase its productive capacity; that Luria, without justification, rejected scrap steel shipped to it under certain orders and cancelled other orders; that because of this breach of the exclusive dealership contract Safer suffered damages in the sum of $70,270.34, consisting of the cost of equipment bought to expand its capacity and losses sustained because of the rej ected or cancelled orders.
The matter was tried by jury and a verdict was returned in favor of the defendant and plaintiff in reconvention in the amount of $36,001.22, on a finding that Luria was guilty of a “designed breach of contract from some motive of interest.or ill will.” Judgment was rendered accordingly. Luria perfected this suspensive appeal. The judgment is manifestly erroneous and must be reversed.
We note at the outset that a jury’s verdict is entitled to great weight especially, as in this case, when the testimony is conflicting and the questions involved are of fact and credibility. However, after careful and painstaking perusal of the voluminous record in this matter we find that, as a matter of law, there is insufficient evidence to sustain the verdict. Mayes v. McKeithen (1968) La.App., 213 So.2d 340; Lambert v. State Farm Mutual Auto Ins. Co. (1966) La.App., 184 So.2d 107.
There is no dispute that funds were advanced to Safer by Luria. Actually, of the $22,079.48 claimed by Luria, Safer stipulated that $21,352.32 was due, leaving only the balance of $727.16 contested. From their verdict, the jury found that the $727.-16 was not due since from the amount awarded on Safer’s reconventional demand they only offset $21,352.32. We will not disturb this finding by the jury.
Luria was allowed by Safer to introduce its account records without testimony and Safer then stipulated that the account was correct except for $727.16, which Safer contended was not due. Safer advanced no reason for the discrepancy between its computation of the account and Luria’s except to produce testimony that a Safer accountant found the account amounted to the sum stipulated. The only testimony offered by Luria to support its claim to the disputed amount was that given by a railroad official who testified that the gross weight originally shown for a gondola of Safer scrap material was incorrect, being in excess of actual weight by approximately ten tons. The implication was that this accounted for the different balances contended for by each party, Safer having figured what was due him on the higher weight’ while Luria used the correct weight. No proof was offered, however, to show that the weight discrepancy would, under the particular contract involved, produce a sum equal to the contested amount. The jury found that Luria had failed to prove that it was owed the full amount claimed. We can find no error in this portion of the verdict.
Thus, we move to consideration of the Safer reconventional demand. As we noted, the demand is based on alleged damages suffered by reason of breach by Luria of an exclusive dealership contract. The primary question is, was such a contract perfected ?
Mike Safer, president of the defendant company and its predecessor, testified that on August 5, 1964, Herbert Aronoff, Vice-President of Luria’s local division, approached him and, due to the fact that a major Luria supplier in the area had bypassed Luria and sold directly to a steel mill, asked if the Safer company could “take up the slack” and fill Luria’s needs. Mr. Safer testified that he told Mr. Aron-off that he could if his company’s capacity was increased by the purchase of more equipment and repair of that already in use. Mr. Aronoff then told him, Mr. Safer testified, that he would be the exclusive or major dealer supplying Luria in the Baton Rouge area with “the sky as the limit.” *632 Mr. Safer’s assistant, who was present during this conversation, testified that Mr. Aronoff told Mr. 'Safer, “up-date your machinery, buy that new crane, I’m with you one hundred percent, the sky’s the limit.”
It was on the basis of this conversation that Safer contended that a contract was perfected by which it was appointed exclusive dealer for Luria. Safer bought new equipment, repaired some of its existing facilities and began accepting Luria purchase orders for scrap material. Thereafter, two large amounts of Safer scrap, shipped under Luria orders, were rejected. Safer contested the rejections to no avail and stopped shipping to Luria. The business was then closed. The alleged damages claimed consist of the cost of the new equipment bought, the repairs made and the cost of reprocessing and reselling the rejected material. During the course of the trial the amount claimed as damages was reduced from $70,270.34 to $57,353.52.
Luria, of course, takes the position that no contract was entered. Mr. Aronoff testified that he did not make Safer an exclusive dealer for he was without authority to do so though he admitted that he might have said that he would make Safer a major dealer in the area; that he told Mr. Safer he could not continue in business if he did not keep his equipment in operating condition; and, that he did not agree to finance new equipment for Safer. The Luria defense also revealed that Safer was advanced money against accepted purchase orders and that Safer failed to fill the orders. Also, during the time of the alleged exclusive dealership, both Safer and Luria had dealings in scrap materials with others.
On the basis of the testimony in this record, as briefly sketched above, we find that the jury was in error in finding that a contract between Safer and Luria was perfected. As a matter of law proof was not made of a definite agreement between the parties. The parties apparently misunderstood the statements each made on August 5th, and in such case there can be no consent and therefore no contract. Cheramie v. Stiles (1949) 215 La. 682, 41 So.2d 502; LSA-C.C. Articles 1779, 1797 and 1798.
Even assuming arguendo that a contract was perfected, there is no proof that it was breached by Luria. Safer contends that a breach occurred when, on two occasions, scrap material shipped under Luria purchase orders was rejected. The purchase orders required that the scrap be “suitable and acceptable” as the class ordered. The classification by which “suitable and acceptable” was to be determined was admitted by both sides to be that promulgated by the Institute of Scrap Iron and Steel, Inc. (ISIS). Under this classification, No. 1 Heavy Melting Steel, which was ordered in the case of both rejections, was required to be at least one-fourth inch thick. An inspector for the consumer for whom Luria ordered the scrap from Safer rejected the Safer steel as not suitable and acceptable because it contained 10-20% steel of less than the required thickness.
Safer contended that the scrap material rejected met the ISIS specifications for the scrap materials ordered. An inspector from the Shilstone Testing Laboratory was retained by Safer when the first shipment was rejected and he found most of the rejected material to be acceptable, allowing a 10% tolerance in size. Safer admitted however that scrap shipped under a purchase order was always inspected and accepted or rejected on the basis of just such an inspection as occurred in this instance. Luria contended that acceptance or rejection following inspection was final and non-appealable and introduced testimony to that effect. Moreover, the two purchase orders contained the following conditions: the first provided that “consumers weights and gradings to govern final settlement” and the other that “final inspection to be made at time that material is shipside.” If an exclusive franchise contract existed, it was subject to the conditions contained in each purchase order Safer accepted. Thus, there could be no breach of the exclusive dealership contract by inspection and rej ec *633 tion of shipments because such inspection was provided for by conditions in the purchase orders or by acknowledged trade custom. This conclusion, that there was no breach of contract, is reinforced when it is realized that inspection of the Safer material was made by a party who, as between Safer and Luria, was disinterested. Luria did not determine who would make the inspection nor did it control his actions after he was selected. There is no proof of fraud or bad faith on the part of Luria in these transactions. The inspector’s rejection of the Safer scrap material as unacceptable was objective and final and cannot amount to a breach of contract on Luria’s part. The jury erred in finding otherwise.
Finally, and at this point assuming the existence of an exclusive dealership contract between Safer and Luria and the breach thereof of Luria, we find no proof of the damages sustained by Safer. The reconventional demand included a claim for the cost of purchase and repair of equipment purportedly made in accord with the exclusive dealership arrangement. Evidence was in fact introduced to show the cost of the new equipment and the cost of the repairs made. However, the record is without proof of the salvage value of the new or repaired equipment. Damages in this case would equal the amount paid for purchase or repair less present salvage value. Safer could not recover the total it spent and in not offering evidence relative to the present value of the new or repaired equipment it failed to prove the actual amount of loss sustained. As for loss sustained by reason of the rejected shipments no proof was offered to support the claim except itemized statements from Safer to Luria. The amounts shown on these statements were neither explained nor proved. The finding of the jury that Safer suffered $57,353.52 in damages, the total amount expended to purchase or repair equipment and the losses claimed because of the rejections, was, in law, manifestly erroneous.
For the foregoing reasons the judgment appealed, in favor of Capitol Steel, Inc. and against Luria Brothers and Company, Inc. in the amount of $36,001.22 is reversed and set aside and judgment is rendered herein in favor of Luria Brothers and Company, Inc. and against Capitol Steel, Inc. in the full sum of $21,352.32, with legal interest from date of judicial demand until paid. All costs of this appeal are to be paid by Capitol Steel, Inc.
Reversed and rendered.